OPINION
{¶ 1} Appellant William Hoyle appeals a judgment of the Stark County Court of Common Pleas, Juvenile Division, finding him delinquent by reason of gross sexual imposition:
 {¶ 2} "The Court's determination that Appellant was delinquent by reason of gross sexual imposition was an abuse of discretion and against the manifest weight of the evidence.
 {¶ 3} The Court's disposition in sentencing the Appellant to a permanent commitment to the department of Youth Services with a minimum stay of six months was an abuse of discretion and against the manifest weight of the evidence."
 {¶ 4} On June 12, 2001, appellant William Hoyle, who was seventeen years of age at the time, was assisting his neighbor family with removing rocks from their backyard. Michael Manis, who was seven years old, and his sister Megan, who was three years old, were in the back yard with appellant. Their mother, Melinda Manis, was in the house.
In the Manis' backyard there is a red tool shed. Approximately three feet behind the tool shed, enclosing the backyard, is a wooden privacy fence. At the time of the offense, a short section of the wooden fence was not standing upright. Almost immediately behind the wooden fence is a chain link fence, separating the property from a school playground. Using the exterior of the back of the tool shed for one wall and the wooden privacy fence for the second wall, Michael's father created an enclosure with wood, which the family referred to as "Michael's clubhouse." There is no door to the clubhouse, but an entrance way exists, and at times a solid piece of plywood is placed over the entrance way to prevent entry. On one side of the clubhouse the name "Michael" is visible, and on that same side, a wood knot had fallen out, creating a peep hole. The clubhouse contains a chair without legs that sits on a wooden floor.
 {¶ 5} On June 12, 2001, Megan was wearing shorts and a top. Her shorts had buttons which she had difficulty fastening and unfastening by herself. Appellant took Megan into the clubhouse and placed the large piece of wood across the opening. Through the peep hole, Michael saw appellant pull up Megan's shirt, kiss her on her cheeks and on her "boobies," and pull down her pants to her knees. He then saw appellant sit on the chair, and place Megan on his stomach, moving his body up and down. Appellant's pants were not down.
 {¶ 6} When Melinda came on the back porch, she noticed the wood across the clubhouse entrance way, and called for Megan, who she could not see. Michael and Melinda both saw appellant exit the clubhouse and jump over the chain link fence, attempting to fasten his pants. Megan came out of the clubhouse with her shorts unfastened and told her mother, "He sexed me."
 {¶ 7} Megan was taken to Aultman Hospital for a physical examination. At the hospital, Megan identified Raymond as the person who "touched my butt with his butt." Appellant has a younger brother named Raymond who was present earlier in the day, but was not present in the late afternoon when Michael and his mother saw appellant jump over the fence. According to Melinda, Megan frequently confuses the names of the two boys.
Appellant was charged with delinquency by reason of gross sexual imposition. Following trial in the Stark County Juvenile Court, appellant was found delinquent by reason of gross sexual imposition, and permanently committed to the Department of Youth Services, with a minimum stay of six months.
 I {¶ 8} Appellant first argues that the judgment finding him delinquent by reason of gross sexual imposition was against the manifest weight of the evidence.
 {¶ 9} When a defendant makes a claim that a judgment is against the manifest weight of the evidence, our role is to review the entire record and sit as a thirteenth juror, and decide whether the trier of fact lost its way, resulting in a verdict that is a manifest miscarriage of justice. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The reviewing court should exercise the discretionary power to grant a new trial only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 10} Appellant specifically argues that the testimony of Michael and Melinda Manis was not credible.
 {¶ 11} While appellant argues in his brief that the statements given by Michael and Melinda to the investigating officer were not consistent with their testimony at trial, the investigating officer did not testify, and appellant's attempts to cross-examine the witnesses by using prior statements to the police do not reflect any material inconsistencies. Appellant attempts to rely on the police investigative report in his brief, but this report was not admitted at trial. From looking at the testimony as presented at trial, there were no material inconsistencies in either Michael or Melinda's testimony.
Michael Manis testified that the incident occurred last summer. He testified that he and Megan were in the back yard with appellant, while Melinda was in the house. He testified that appellant and Megan went into the clubhouse, and appellant placed a piece of wood over the door. Michael was observing the activity in the clubhouse through a tiny hole. Michael testified that he saw appellant pull up Megan's shirt, kiss her on her chest and cheeks, pull her pants to knees, place her on top of him, and move himself up and down. He testified that the incident stopped when Melinda called for Megan. At that time, appellant left the clubhouse, and jumped over the property fence.
 {¶ 12} Melinda testified that she was outside doing yard work with her children on the date in question. She went inside her home, leaving the children outside. When she looked outside, she saw a piece of wood leaning on the clubhouse entry way, and Michael peeking in the peep hole. She did not see Megan. When she started to go outside, she saw appellant leave the clubhouse, jump the fence, and go to the school playground behind their residence. She then saw Megan leave the clubhouse with her pants unbuttoned. Melinda testified that Megan cannot unbutton the shorts she was wearing on her own. When Melinda asked Megan what happened, Megan responded, "He sexed me."
 {¶ 13} At the hospital, Megan stated that Raymond touched her butt with his butt. Melinda testified at trial that Megan frequently confused the names of appellant and his brother Raymond.
 {¶ 14} The judgment is not against the manifest weight of the evidence.
 II
Appellant argues that the disposition was against the manifest weight of the evidence, and an abuse of discretion. Appellant argues that his punishment was more severe merely because he refused to admit his wrongdoing.
 {¶ 15} Appellant was found delinquent by reason of gross sexual imposition, in violation of R.C. 2907.05, a felony of the third degree. Pursuant to R.C. 2152.16(A)(1)(e), the court may commit him to the Department of Youth Services for an indefinite term consisting of a minimum period of six months, and a maximum period not to exceed twenty-one years of age. The purposes of disposition for a delinquent child are to provide care, protection and mental and physical development of children; protect the public's interest and safety; hold the offender accountable for his actions; restore the victim; and rehabilitate the offender. R.C 2152.01(A).
 {¶ 16} Prior to disposition, a sex offender assessment was performed on appellant. The assessment reflected appellant felt no empathy for the victim, continued to deny that the offense occurred, and attempted to manipulate the tests given by the assessor. The assessment revealed that these factors would normally rate the person as a high risk to commit another sex offense. Appellant felt that the tests and the assessment were a waste of his time. Because appellant was eighteen at the time of the adjudication, the court was prevented from utilizing juvenile services such as probation.
 {¶ 17} Due to the lack of available services in the community and the factors that made appellant a high risk to re-offend, the court did not abuse its discretion in committing appellant to the Department of Youth Services. In addition to the fact that appellant would not admit any wrongdoing, the assessment considered other factors, such as appellant's attempt to manipulate the tests, his feeling that the assessment was a waste of time, and the relative age of the victim and appellant.
The second assignment of error is overruled.
 {¶ 18} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
Edwards and Boggins, JJ., concur
GSI — manifest weight — DYS commitment